## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

**CIVIL ACTION NO.: 4:08CV-60-M**

**DAVID B. SIMMS, JR.**                                                            **PLAINTIFF**

**v.**

**BRENT McDOWELL, Individually**                                  **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a motion by the defendant, Brent McDowell in his individual capacity, for summary judgment [DN 27]. Fully briefed, this motion is ripe for decision.

### I.  FACTUAL BACKGROUND

The plaintiff, David Simms, complains that various actions taken by Officer McDowell[1] during and subsequent to a traffic stop on June 1, 2007, violated his constitutional rights. On June 1, McDowell initiated a traffic stop after he observed Simms driving a vehicle without a license plate attached to the vehicle's rear bumper.[2] During the traffic stop, McDowell asked Simms if he would consent to a search of his vehicle. When Simms refused, McDowell asked Simms and his passenger to exit the vehicle, he performed a pat-down search of both men, and he instructed his drug-detection dog, Randy, to perform a "narcotics sniff" on the exterior of the vehicle. Randy alerted to the presence of narcotics. McDowell subsequently performed a search of the interior of the vehicle and found an unmarked pill bottle that contained a white residue. McDowell seized the bottle, gave

---

[1] At the time of the traffic stop, McDowell was employed as a patrol officer by the City of Providence, Kentucky.

[2] McDowell later determined that a temporary license plate was affixed to the rear window of the vehicle, but that it was not legible through the window's tinting. Simms does not dispute that McDowell had probable cause to stop his vehicle.

Simms a citation for an illegible license plate, and let Simms and his passenger go. Overall, the traffic stop lasted approximately 18 minutes.

McDowell testified that after he let Simms go, he returned to police headquarters and performed a field test on the white residue contained in the bottle. The test purportedly came back positive for cocaine. He then placed the bottle in an evidence bag, sent it to the state lab for testing, and, with a warrant, arrested Simms for being in possession of a controlled substance. When the state lab performed a more detailed analysis on the white residue, the lab concluded that the residue was not cocaine, but rather acetaminophen. All drug charges against Simms were dropped and Simms now seeks damages against McDowell pursuant to 42 U.S.C. § 1983.[3] McDowell contends that none of his actions violated Simms' constitutional rights and seeks summary judgment.

## II. SUMMARY JUDGMENT STANDARD

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving

---

[3] Simms has also asserted two supplemental state law claims for malicious prosecution and intentional infliction of emotional distress.

2

party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986). The Rule requires the non-moving party to present "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

### III. DISCUSSION

Officer McDowell argues that he is entitled to summary judgment on both the federal and supplemental state law claims asserted against him because (1) he acted with the requisite probable cause in searching the interior of Simms' vehicle, seizing the pill bottle in question, and arresting Simms on drug possession charges and (2) his conduct was not outrageous. Each of these arguments will be addressed in turn.

#### A. FEDERAL CLAIM

Simms' federal law claims are brought pursuant to 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must establish "both that 1) []he was deprived of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001) (citation omitted). Section 1983 "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." Alexander v. Haymon, 254 F. Supp. 2d 820, 830 (S.D. Ohio 2003) (quoting Gardenhire v. Schubert, 205 F.3d 303, 310 (6th Cir. 2000)) (internal marks omitted). At issue here are Simms' substantive rights under the Fourth Amendment to the United States Constitution. The Fourth Amendment provides that the "right of the people to be secure in their persons, houses,

papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend IV. Whether a search or seizure is reasonable under the Fourth Amendment is a question of law. See United States v. Garza, 10 F.3d 1241, 1245 (6th Cir. 1993) ("The ultimate determinations as to the legality of the stop and the existence of probable cause to search the vehicle are conclusions of law . . . .") (citation omitted).

### *1. Use of Drug-detection Dog*

Simms argues that the warrantless seizure of the pill bottle found in his car was unlawful because the traffic stop "clearly exceed[ed] the reasonableness of a legitimate investigative detention." When a police officer stops a car based upon probable cause that the driver has committed a civil traffic violation, the stop "is like an investigative detention, the scope of which is governed by Terry[ v. Ohio, 392 U.S. 1 (1968)] principles." United States v. Perez, 440 F.3d 363, 370 (6th Cir. 2006) (citation omitted). Once the purpose of the traffic stop is completed, "the officer may not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention." Id. And although neither probable cause nor reasonable suspicion are required before police may use a drug-detection dog on a lawfully stopped vehicle, see Illinois v. Caballes, 543 U.S. 405, 409 (2005) (use of a well-trained narcotics-detection dog . . . generally does not implicate legitimate privacy interests"), the use of such a dog may work an unreasonable seizure if it "improperly extend[s]" the traffic stop, see United States v. Bell, 555 F.3d 535, 539 (6th Cir. 2009). That is, if the use of a drug-detection dog would "detain the motorist any longer than is reasonably necessary to issue the traffic citation, . . . the officer must have reasonable suspicion that the individual has engaged in more extensive criminal conduct." Id.

4

Relying on Weaver v. Shadoan, 340 F.3d 398 (6th Cir. 2003), Officer McDowell argues that he had reasonable suspicion of Simms and his passenger because they had a nervous demeanor.[4] But Weaver merely stands for the proposition that nervousness is only one factor used to determine whether there is reasonable suspicion. See United States v. Mesa, 62 F.3d 159, 162 (6th Cir. 1995) ("nervousness is generally included as one of several grounds for finding reasonable suspicion and not a ground sufficient in and of itself.") (citation omitted). In United States v. Blair, for example, a police officer who stopped a driver for a tag-light violation testified that he had reasonable suspicion of the driver because the driver "appeared more nervous than is usual for a traffic stop." 524 F.3d 740, 746 (6th Cir. 2008). When the driver did not consent to a search, the officer requested that a drug-detection dog be brought to the scene to perform a narcotics sniff. In suppressing the evidence discovered as a result of a subsequent search, the Sixth Circuit found that nervousness–"an unreliable indicator, especially in the context of a traffic stop" where "[m]any citizens become nervous . . . even when they have nothing to hide or fear"–was insufficient to create reasonable, articulable suspicion of criminal activity. Id. at 753. Here, the Court likewise finds that McDowell's testimony that Simms and his passenger were nervous does not establish that he had

---

[4] The following exchange with McDowell took place during his deposition:

Q. In other words, why didn't you just sit down and write him a ticket and give it to him and send him on his way?
A. He seemed very nervous.
Q. How so?
A. Well, for just a license plate, he seemed just real nervous, real defensive, and I guess you could see his heart beat every time, you know.
Q. You could see his heart beat through his shirt?
A. Well, there was – the jugular veins, or – you know.
Q. Oh, I see.
A. So just breathing real fast.

(Brent McDowell Dep. 14:10-22, Dec. 2, 2008.)

5

a reasonable, articulable suspicion of criminal activity so as to justify a detention longer than was necessary to write a traffic citation.

Notwithstanding this lack of reasonable suspicion, using Randy to detect narcotics was not unlawful because it did not impermissibly extend the traffic stop. "In a traffic stop, an officer can lawfully detain the driver of a vehicle until after the officer has finished making record radio checks and issuing a citation, because this activity would be well within the bounds of the initial stop." Bell, 555 F.3d at 541. The video of this traffic stop indicates that McDowell requested that dispatch perform a check of Simms' license within two minutes of the initial stop. It shows that Randy alerted to the presence of narcotics approximately five minutes after the stop, but that dispatch did not report back with the results of the license check until approximately one minute later. Therefore, McDowell's failure to write a citation before Randy alerted to narcotics was not unreasonable.

*2. Search of Car's Interior*

After Randy alerted to the presence of narcotics, Officer McDowell performed a warrantless search of the car's interior. Generally speaking, a search is only reasonable if it is "conducted pursuant to a warrant issued by an independent judicial officer." California v. Carney, 471 U.S. 386, 390 (1985). But there are exceptions, "one of which is the 'automobile exception'" that permits "'a warrantless search of an automobile based upon probable cause to believe that the vehicle contain[s] evidence of crime . . . .'" United States v. Pasquarille, 20 F.3d 682, 690 (6th Cir. 1994) (quoting California v. Acevedo, 500 U.S. 565, 569 (1991)). There is "no requirement of exigent circumstances to justify such a warrantless search." United States v. Johns, 469 U.S. 478, 484 (1985). It is well-established "that an alert by a properly-trained and reliable dog establishes

6

probable cause sufficient to justify a warrantless search of a stopped vehicle.[5]" United States v. Hill, 195 F.3d 258, 273 (6th Cir. 1999). And if police have probable cause to search the vehicle, "they may conduct a warrantless search of any containers found inside that may conceal the object of the search." Johns, 469 U.S. at 479-80 (citing United States v. Ross, 456 U.S. 798 (1982)). Because Randy alerted to the presence of narcotics, McDowell could properly search Simms' vehicle for narcotics and any container, such as the pill bottle, that could conceal narcotics.

### *3. Seizure of Pill Bottle*

After finding the pill bottle and observing the white powder residue contained in the bottle, Officer McDowell seized it so that he could conduct a field test on the residue at police headquarters. Simms argues that this seizure was unlawful because McDowell did not have probable cause to believe that the white residue was a controlled substance. He contends that the white residue could have been any substance including the remnants of a legal medication, such as Tylenol. He also points out that Randy did not alert specifically to the pill bottle. But Simms relies upon a rigid application of the probable cause standard. Instead,

> probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief, that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required.

Texas v. Brown, 460 U.S. 730, 742 (1983) (citations and quotation omitted) (finding that police had probable cause to believe that an opaque balloon contained contraband even though the balloon may have contained any substance or no substance at all). In United States v. Hood, a police officer

---

[5] Simms neither challenges the training and reliability of Randy nor does he challenge that Randy actually alerted to the presence of narcotics.

7

looked into a car to find its VIN number. 978 F.2d 1260 (table), 1992 WL 322373, at *5 (6th Cir. Nov. 5, 1992). In doing so, the officer observed a clear pill bottle containing a white rocky substance that he thought was cocaine. Id. He then arrested the driver and seized the pill bottle. Id. The driver sought to suppress the pill bottle and its contents on grounds that its seizure was not supported by probable cause because the bottle could have contained any substance. Id. The Sixth Circuit disagreed and held that the seizure and arrest was justified because the police had probable cause based upon the totality of circumstances. Id. The police suspected that the driver had just engaged in a drug transaction and then observed the pill bottle and its contents. Id.

Here, McDowell had probable cause to believe that the pill bottle contained contraband: Randy had just alerted to the presence of narcotics in the vehicle; McDowell found an unlabeled prescription bottle between the seats of the vehicle; and that bottle contained a white powder residue that resembled cocaine or methamphetamine. This would certainly "warrant a man of reasonable caution in the belief" that the bottle contained contraband. And having found the bottle and residue in plain view, McDowell was authorized to seize the bottle without a warrant. See Brown, 460 U.S. at 739 ("if, while lawfully engaged in an activity in a particular place, police officers perceive a suspicious object, they may seize it immediately").

### 4. *Subsequent Testing of Pill Bottle*

After seizing the pill bottle, Officer McDowell returned to police headquarters and conducted a field test on the white residue. Simms argues that before this test was conducted, McDowell should have obtained a search warrant because any exigencies of the traffic stop no longer existed. The Supreme Court has specifically addressed Simms' argument and rejected it. In Johns, the DEA seized a vehicle, along with suspected packages of marijuana, after they noticed an odor of

8

marijuana emanating from the vehicle. 469 U.S. at 480-81. The packages were removed from the vehicle and placed in a warehouse for three days before being opened and searched without a warrant. Id. at 481. In attempting to suppress the contents of the packages, the defendants argued that the search should not have occurred without a warrant as three days had passed since the packages were seized from the automobile. The Supreme Court held that, "[i]nasmuch as the Government was entitled to seize the packages and could have searched them immediately without a warrant, we conclude that the warrantless search three days after the packages were placed in the DEA warehouse was reasonable . . . ." Id. at 487. Warrantless searches of containers found within a vehicle are not subject to different "temporal restrictions" than warrantless searches of the vehicle itself. Id. at 485. Just as warrantless searches of automobiles can be conducted after the vehicle has been impounded and in police custody, so too can containers found within the vehicle. See id.; Michigan v. Thomas, 458 U.S. 259, 261 (1982) ("the justification to conduct such a warrantless search does not vanish once the car has been immobilized."). Accordingly, McDowell's subsequent testing of the contents of the pill bottle without a warrant was reasonable and did not violate the Fourth Amendment.[6]

### 5. *Arrest With Warrant*

After the test results purportedly came back positive for cocaine, Officer McDowell applied for an arrest warrant. In an affidavit, he reported the results of the field test. Simms argues that

---

[6] The Court agrees with McDowell that the testing of the residue in the pill bottle did not constitute a search. See United States v. Jacobsen, 466 U.S. 109, 123 (1984) ("A chemical test that merely discloses whether or not a particular substance is cocaine does not compromise any legitimate interest in privacy"). But it did constitute a seizure of the residue. See id. at 124-25 ("the field test did affect respondents' possessory interests protected by the [Fourth] Amendment, since by destroying a quantity of the powder it converted what had been only a temporary deprivation of possessory interests into a permanent one"). However, the warrantless seizure could only have had a *de minimis* impact on any protected property interest. Therefore, it was reasonable. Id.

McDowell should have waited for the state lab to provide confirmation of the contents of the bottle rather than relying on the field test. But this argument fails because the field test itself provided sufficient probable cause to arrest Simms. See, e.g., Pennington v. Hobson, 719 F. Supp. 760, 768 (S.D. Ind. 1989) (probable cause to arrest existed where field test indicated powder was cocaine even when a subsequent laboratory test identified powder as aspirin).

Simms also contends that McDowell lied in his affidavit about the results of the field test. He points to the lab results which identify the powder as acetaminophen. But "[t]he mere fact that the laboratory test returned a contrary result does not raise an inference that [the police officer] was lying when he said his tests came out positive; more evidence is needed." Lamping v. Walraven, 30 F. App'x 577, 580 (6th Cir. 2002) (unpublished). Simms suggests that McDowell had reason to lie because he perceived Simms as having an attitude. "What better way for McDowell to punish Simms for his bad attitude than to have him arrested on a bogus drug test?" He also suggests that McDowell was not completely honest in his deposition about his activities with a minor child 15 years ago. But Simms offers no evidence to show that McDowell lied in his affidavit. His proof consists entirely of speculation which is insufficient to defeat a motion for summary judgment. See id. ("[Plaintiff's] allegations amount to speculation, and mere speculation will not overcome a motion for summary judgment."). Having failed to present any proof, other than speculation, that McDowell lied in his affidavit in support of the arrest warrant, Simms' arrest was lawful in that it was supported by probable cause. Accordingly, summary judgment as to Simms' federal claim is appropriate.[7]

---

[7] In his report, McDowell's expert opined that "[t]he field test employed by Officer McDowell was based on a color change when the active reagent (Cobalt Thiocyanate) is exposed to cocaine. However, several other unrelated compounds may also provide a color change, referred to as a 'false positive' reaction." (Kupiec Report at 3.) In an experiment, Kupiec showed that acetaminophen could provide a "false positive"

### B. STATE CLAIMS

Likewise, summary judgment is appropriate on Simms' state law claims. Simms' malicious prosecution claim is premised upon the belief that he was arrested without probable cause. However, as the Court concluded above, the result of the field test provided probable cause to arrest Simms. And Simms' claim for intentional infliction of emotional distress is premised upon the belief that Officer McDowell lied in his affidavit in support of the arrest warrant. But as the Court concluded above, Simms has presented insufficient evidence to raise an inference that McDowell lied in the affidavit. Therefore, each of these claims fail.

### IV. CONCLUSION

There being no genuine issue of material fact, **IT IS HEREBY ORDERED** that the motion by the defendant, Brent McDowell in his individual capacity, for summary judgment [DN 27] is **GRANTED**. A Judgment will be entered consistent with this Opinion.

cc: Counsel of Record

---

reaction for cocaine. Simms does not dispute this finding. He only suggests that the reaction obtained by McDowell, if any, was very faint. But Simms provides no expert testimony to establish that a reaction to powder acetaminophen is always faint or that a faint reaction does not constitute a positive reaction. This is insufficient to overcome a motion for summary judgment.

11